IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ANTHONY LOVE, JR., | ) ) ) | |
| Plaintiff, | ) ) | No. 12 C 7400 |
| v. | ) ) | Magistrate Judge |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | ) ) ) ) ) | Maria Valdez |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Anthony Love Jr.'s claim for Supplemental Security Income and Disability Insurance benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Love's motion for summary judgment [Doc. No. 20] denied. The Government's motion for summary judgment [Doc. No. 21] is granted.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as defendant in this suit.

## BACKGROUND

### I. PROCEDURAL HISTORY

Love originally applied for Title II Disability Insurance Benefits and Supplemental Security Income Benefits on March 5, 2010. (R. 129–39.) Love alleged disability beginning July 1, 2004 due to depression, schizophrenia, and complications associated with high blood pressure. (R. 171–75.) Love's applications were initially denied on May 10, 2010, (R. 28–31,) and again on reconsideration on July 30, 2010. (R. 36–39.) Love timely filed a request for a hearing before an Administrative Law Judge ("ALJ") on September 24, 2010. (R. 41.)

On June 8, 2011, the ALJ found Love to be ineligible for benefits and that he was not disabled under the Social Security Act. (R. 19.) The Social Security Administration Appeals Council denied Love's request for review on July 18, 2012, (R. 1–5,) leaving the ALJ's decision as the final decision of the Commissioner of Social Security and therefore reviewable by the District Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. FACTUAL BACKGROUND

#### A. <u>Claimant's History</u>

Love was born on August 15, 1977. ( R. 129.) He is single and has four minor children. (R. 133–34.) Prior to his alleged period of disability, Love worked as a warehouse truck unloader from 2007 to 2008. (R. 177.) He graduated from the 10th grade and has no special occupational training. (R. 176.)

## B. Testimony and Medical Evidence

### 1. Love's capabilities

In reports to the Social Security Administration, Love stated that he has difficulty with personal hygiene, using the restroom, and preparing meals. (R. 191.) He noted problems with seeing double and limited eyesight. (R. 188, 191.) He takes Amlodipine for high blood pressure and three different medications for his bipolar disorder. (R. 190.)

Love reported that he cannot work. (R. 210.) For the most part, his mother is responsible for taking care of his home, including basic chores such as laundry, cooking, cleaning, and shopping. (211–13.) Love's mother also cares for his children. (R. 211.) He has difficulty sleeping without medications and struggles with maintaining focus long enough to complete house or yard work. (R. 211, 213.) Love does not have hobbies and does not engage in social situations frequently. (R. 216–17.)

### 2. Medical evidence

Love was seen by doctors for bronchitis, hypertension, gastritis, duodenitis, rectal pain, and dysuria at various times in 2009 and early 2010. (R. 286–324, 367–97, 444–52.) On June 3, 2009, he was admitted to Silver Cross Hospital as a result of having taken PCP, with impaired judgment and hallucinations. (R. 426.) At the time, Love claimed that he had taken Vicodin and "20 other pills." (*Id.*) Two

similar episodes occurred in 2009, as Love presented to Silver Cross with major depression and a history of schizophrenia, as well as PCP, cocaine, and alcohol abuse. (R. 331, 399.)

On May 3, 2010, Love saw Dr. John Brauer for a psychological evaluation. (R. 460–63.) Dr. Brauer diagnosed Love with a substance induced mood disorder with depressive features, substance induced anxiety disorder, and polysubstance abuse. (R. 463.) He noted Love's inability to manage funds for himself, and that Love had "very poor" concentration and attention. (R. 462–63.)

On May 26, 2010, Love presented to the University of Illinois-Chicago Medical Center with an orbital fracture of the left eye. (R. 485–87.) He was treated for the fracture and for diplopia resulting from his injury. (R. 487.)[2] Corrective surgery was scheduled for August 4, 2010. (R. 493.) On July 6, 2010, Dr. Mark Fritz completed an Opthalmological Report for the Social Security Administration. (R. 498–502.) Dr. Fritz found no limitation in the visual field of Love's left eye. (R. 499.) However, Dr. Fritz did not mark boxes on the form to indicate whether Love was able to drive safely, work around dangerous machines, work around unprotected heights, and perform activities requiring good hand eye coordination. (R. 501.) Instead he grouped them and wrote a question mark with the note, "due to double [vision] complaints." (*Id.*) On July 29, 2010, a non-examining state agency reviewer found Love's eye problems to be non-severe. (R. 504–05.)

---

[2] Diplopia is commonly known as double vision.

4

On August 4. 2010, Love underwent surgery to repair a left orbital fracture and for a lateral canthoplasty of the left eye. (R. 521.) During two follow up visits in September, 2010, Dr. Fritz noted that Love's eyes were doing well, but reported phorias — occasional tendencies for an eye to drift when the other is tired or not in use. (R. 511–12.)

### 3. Vocational expert findings

While no in-person hearing was held before the ALJ, vocational expert ("VE") Grace Gianforte completed an interrogatory pertaining to Love's ability to work based on his review of the medical record. (R. 595–99.) The VE reported that there was sufficient evidence in the record to allow her to form an opinion of Love's vocational status. (R. 596.) In response to a hypothetical question of whether a person with Love's work experience, a high school education, and the ability to perform work full range of exertional levels — but limited to occasional interactions with the public, co-workers, and supervisors — the VE stated that such a person could perform Love's past relevant work unloading trucks. (R. 577.) The VE also indicated that the hypothetical person could perform available jobs in the national economy, such as handpacker, conveyor feeder, or sorter. (R. 598.)

### C. <u>ALJ Decision</u>

The ALJ found that Love had not engaged in substantial gainful activity since his application date of February 24, 2010. (R. 12.) He also found that Love suffered from severe impairments, including depressive disorder, anxiety disorder, personality disorder, and a history of polysubstance abuse. (*Id.*) The ALJ concluded

5

that none of Love's impairments met or equaled a determinable impairment listed in 20 C.F.R. Part 404. (R. 13.) In a footnote, he indicated that while the hypothetical question to the VE concerning Love's ability to work did not include any discussion of a visual impairment, that omission was irrelevant because "the preponderance of the evidence supports a finding that there are no limitations from the claimant's visual impairment." (*Id.*)

The ALJ next determined that Love had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, so long as his interaction with the public, coworkers, and supervisors was limited. (R. 15.) He based this conclusion on Love's lack of evidence concerning the onset, duration, and intensity of his ailments. (*Id.*) The ALJ also noted evidence that Love's mental state had improved during his time at the Will County Adult Detention Facility. (R. 17.)

Based on Love's RFC and the VE's interrogatory responses, the ALJ concluded that Love was capable of performing his past relevant work as a warehouse worker. (R. 17.) In the alternative, he found that Love could perform other jobs in the national economy, such as handpacker. (R. 18.) As a result, the ALJ concluded that Love had not been under a disability from the time of his alleged initial onset date through the decision and therefore denied his claim for benefits. (R. 19.)

# DISCUSSION

## I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4) (2008).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir.1992). A negative answer at any step, other than at step 3, precludes a finding of disability. Id. The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863 , 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its own judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ "must at least minimally articulate the analysis for the evidence with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Murphy v. Astrue*, 498 F.3d 630, 634

(7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions, and must adequately articulate his analysis so that we can follow his reasoning.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Love makes two arguments in support of his appeal from the ALJ's decision denying him benefits: (1) the ALJ should have accounted for Love's visual impairments in his RFC assessment; and (2) the ALJ should have included Love's visual impairments in hypothetical questions submitted to the VE. Love's arguments are addressed in turn.

#### A. **Love's Visual Impairments**

Love argues that the ALJ erred by failing to consider potential work-related limitations that might stem from his left orbital fracture and subsequent vision problems. In failing to consider these effects, Love claims that the ALJ's RFC assessment was not "based on all the relevant evidence in the medical record," which the regulations require. *See* 20 C.F.R. § 404.1545(a)(1). He concludes that

pre-operative reports of Love's diplopia, the boxes in Dr. Fritz's report left blank with notations of possible vision problems, and a letter that Love sent to his attorney complaining of diplopia cumulatively warrant remand for consideration of his vision problems.

    The ALJ's opinion makes it clear that he considered relevant evidence related to Love's vision problems. He cited eye-examination records from the period preceding Love's left orbital surgery in August, 2010, giving controlling weight to Dr. Fritz's opinion. (R. 13.) Among other evidence, the ALJ considered Dr. Fritz's notes that Love had 20/25 uncorrected vision in his left eye. (R. 12.) The same treatment notes also mention that Love's double vision had decreased. (R. 512.) Presumably, the ALJ read and considered these notes in concluding that Love's vision problems were not a hindrance to ability to work. The only countervailing pieces of evidence available to Love are Dr. Fritz's ambiguous note on his Opthalmological Report and the report of Love's phorias during follow up visits.[3]

---

[3] Love also points to a letter he wrote from prison to his attorney complaining of diplopia in May, 2011. The Commissioner correctly notes that this letter was submitted on appeal, following the ALJ's decision. Because the evidence was unavailable to the ALJ, its omission from his decision is unreviwble by this court. *See Eads v. Secretary of Health and Human Servs.*, 983 F.2d 815, 816–17 (7th Cir. 1993) (holding that courts are limited to reviewing evidence submitted directly to the ALJ when the Appeals Council refuses to review a claim.)

An ALJ's determinations in benefits claims are reviewed using a substantial evidence standard, which "requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Here, it is clear that there was sufficient evidence in the records for the ALJ to conclude that Love's vision problems would not hinder his ability to work. Thus, the ALJ's conclusion does not require a remand.

"[T]he ALJ is not required to discuss every piece of evidence but is instead required to build a logical bridge from the evidence to her conclusions." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). Where portions of treating records might support one conclusion, but other objective evidence does not, an ALJ is not required to give those portions controlling weight, or even to discuss them if they would not affect the ultimate outcome of the case. *See Simila*, 573 F.3d at 516 (finding no error in the ALJ's omission of evidence because "[a]lthough snippets of Dr. Michet's notes and Dr. Steiner's testimony might support Dr. Caillier's opinions, other objective evidence is inconsistent with it: Many of Simila's medical records state that Simila had a normal, pain-free range of motion and normal strength . . . .") Love's request for remand because the ALJ "ignored" critical evidence in his case is therefore without merit. The ALJ omitted only the unchecked boxes on Dr. Fritz's report, which were of minimal probative value in any event, and Dr. Fritz's notes on Love's phorias. These factors were not shown to have any consequential effect on Love's ability to work and therefore did not call for any additional analysis.

Finally, even in cases where an ALJ misses some relevant evidence in her decision, but such evidence would not have changed the ultimate outcome, that harmless error does not require remand. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). ("[A]lthough [the ALJ] failed to articulate her reasons for rejecting a portion of Dr. Vincent's opinion (or failed to notice that portion, whatever the case may be) . . . , [i]t would serve no purpose to remand this case to the ALJ for a statement of the obvious.") Here, Love claims that the ALJ's RFC assessment should have further limited Love's capacities by stating that he could not drive safely, work around dangerous machines, work around unprotected heights, or perform activities requiring good hand eye coordination. However, none of the representative occupations the ALJ concluded that Love could perform, including handpacker and truck loader/unloader, require these abilities. Consequently, the results of the ALJ's analysis would have been the same even if he had relied upon the ambiguous sections of Dr. Fritz's analysis indicating the possibility of limitations posed by Love's vision problems.

**B.  RFC Assessment**

Love next argues that the case should be remanded because the ALJ did not include any discussion of Love's alleged visual limitations in his hypothetical questions submitted to the VE. He cites *Young v. Barnhart*, 362 F.3d 995 (7th Cir. 2004), claiming that where an ALJ's hypothetical question fails to include all of a claimant's limitations, remand is required. However, this is not all that *Young* says. Instead, the Seventh Circuit made clear in that case that where an ALJ can assume

that the VE has knowledge of all relevant limitations in the medical record because, as here for example, he reviewed the entire record in creating his opinion, the ALJ's omission of certain limitations in the record do not warrant remand. *Id*. at 1002–03. Furthermore, hypothetical questions to the VE are only required to include those limitations that are accepted by the ALJ, and may exclude impairments that the ALJ reasonably discredits. *Herron*, 19 F.3d at 337. Here, the ALJ reasonably rejected Love's claimed visual impairments, and excluding them from hypotheticals submitted to the VE was therefore not erroneous.

Furthermore, as discussed above, even in the event that the ALJ had included limitations posed by double vision in his hypotheticals to the VE, the result would have been the same. Failure to do so was therefore harmless error. Because Love cannot make a credible argument describing how the outcome would have changed if the ALJ had delivered different hypotheticals to the VE, remand is not justifiable in this case.

## CONCLUSION

For the foregoing reasons, Plaintiff Anthony Love Jr.'s motion for summary judgment [Doc. No. 20] denied. The Government's motion for summary judgment [Doc. No. 21] granted.

**SO ORDERED.**  **ENTERED:**

**DATE:** **June 16, 2014**

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**